**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **PARTHENON UNIFIED MEMORY ARCHITECTURE LLC,** § § § | | **Case No. 2:14-cv-902-JRG-RSP** (Lead) |
| Plaintiff, § | | |
| v. § § | | |
| **SAMSUNG ELECTRONICS CO. LTD.** and **SAMSUNG ELCTRONICS AMERICA, INC.,** § § § § | | |
| **HUAWEI TECHNOLOGIES CO. LTD, HUAWEI TECHNOLOGIES USA, INC. and HUAWEI DEVICE USA, INC.,** § § § § | | **Case No. 2:14-cv-687-JRG-RSP** (Consolidated) |
| **MOTOROLA MOBILITY LLC** § § | | **Case No. 2:14-cv-689-JRG-RSP** (Consolidated) |
| Defendants. § § | | |

**<u>PLAINTIFF PARTHENON UNIFIED MEMORY ARCHITECTURE LLC'S
RESPONSE IN OPPOSITION TO SAMSUNG'S MOTION FOR RECONSIDERATION</u>**

**I.     INTRODUCTION**

On February 11, 2016, Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendants") filed objections and a motion to reconsider Magistrate Judge Payne's Memorandum and Opinion on claim construction (Dkt. 160). Because Judge Payne's claim constructions properly comport with the intrinsic and extrinsic record in this case and properly apply the case law regarding the construction of claim terms, and because Samsung's offered constructions would improperly narrow the meaning of the construed terms, Plaintiff Parthenon Unified Memory Architecture LLC ("PUMA") files this response in opposition to Samsung's objections and motion for reconsideration.

**II.    CONSTRUED TERMS**

  **A.     "bus"**

| Term | Court's Construction | Defendants' Proposal |
|---|---|---|
| "bus" | "a signal line or a set of associated signal lines to which a number of devices are coupled and over which information may be transferred between them" | "a signal line or set of associated signal lines to which a number of devices are directly connected and over which information may be transferred by only one device at a time" |

Defendants' construction fails to find support in either the intrinsic or extrinsic evidence. Neither source of evidence limits a bus to one in which devices are "directly connected" or requires that "information may be transferred by only one device at a time." As correctly observed by the Court, Defendants' construction would read out common bus technologies like split-transaction buses, "network topology" buses like NoCs and fabrics, and other bus technologies that can transfer information between multiple devices at the same time. *See* Dkt. 155, at 14.

Additionally, Defendants' requirement that devices be "directly connected" to the bus would read out buses that use tri-state buffers or other intervening components or switches that *disconnect* the various devices from the bus. As a result, Defendants' construction is an attempt

to restrict the scope of the claims to the most primitive form of a bus and should be rejected. Moreover, Defendants' construction would read out exemplary embodiments described in the asserted patents. As correctly observed by the Court, "Defendants' proposed construction would exclude disclosed configurations such as '789 Patent Figure 2 where the decoder is indirectly connected to the bus." Dkt. 155, at 15.

Contrary to Defendants' argument, the presence of the term "associated" in the court's construction of "bus" allays any genuine concerns held by Defendants over the meaning of the term. As suggested by the Court, a person of ordinary skill in the art would understand that a set of signal lines is "not just any lines chosen randomly," but rather a set of "associated" signal lines. Accordingly, the Court's construction adequately addresses Defendants' arguments.

### B. "in real time"

| Term | Court's Construction | Defendants' Proposal |
|---|---|---|
| "in real time" | "fast enough to keep up with an input data stream" | Indefinite. Alternatively: "fast enough to keep up with the input data stream, wherein obtaining bus mastership does not consume bus cycles" |

Like the term "bus," the term "real time operation" was previously construed in earlier litigation before Judge Davis to mean "processing fast enough to keep up with an input data stream." During claim construction, Defendants conceded that the term "real time" had a definite meaning and did not dispute that the core language of the Court's construction was proper. However, the language added by Defendants concerning "bus mastership" and "bus cycles" comes from a misreading of the prosecution history and the cited art. Contrary to Defendants' argument in its motion for reconsideration, the patentees did not distinguish *Gulick* by narrowing the ordinary scope of "real time." Instead, as briefed by PUMA and explained by the Court, the patentees

distinguished *Gulick* on the basis that the PCI bus—as used in the specific context of *Gulick*—was insufficient for real time performance. *See* Dkt. 155, at 24. As a result, the term is definite and the Court's construction is correct.

### C. "fast bus"

For the reasons explained above with respect to "in real time," the term "fast bus," which incorporates the concept of real time, is not indefinite and the Court's construction is correct.

### D. "arbiter" terms

| Term | Court's Construction | Defendants' Proposal |
|---|---|---|
| a. "arbiter"<br>b. "arbitration circuit"<br>c. "memory arbiter"<br>d. "arbiter circuit" | "circuitry that uses a priority scheme to determine which requesting device will gain access" | "circuitry that uses a priority scheme to determine which requesting device will gain direct access" |

Like the terms "bus" and "real time," the term "arbiter" was previously construed by Judge Davis in an earlier litigation involving one of the asserted patents, namely as "a device that use[s] a priority scheme to determine which requesting device will gain access to the memory." This construction comports with how the term is used in the patents and how a person of ordinary skill in the art would understand arbitration, and as a result, the Court's application of that construction to the related "arbiter" terms is proper.

In contrast, Defendants' proposal seeks to improperly narrow the meaning of the term by adding the requirement of "direct" access. Defendants base their added language on their mistaken belief that the patentees disavowed claim scope during prosecution. However, as the Court correctly noted, "the prosecution history makes clear that the Applicants did not assert that the 'arbiter' distinguished the invention from the prior art." *See* Dkt. 155, at 28. Instead, the patentees added other surrounding language to traverse the cited art based on a *configuration* of the arbiter.

- 3 -

However, neither the original claims nor the amended claims made it to allowance. In response to a subsequent office action raising other rejections, the patentees *canceled all of the pending claims* and wrote a new set of claims that would become the claims of the '459 Patent. Those allowed claims contain their own elements, including the requirement of "without also requiring a second bus," and do not use the "direct access" phrase that Defendants rely upon to change the meaning of the term "arbiter." As correctly observed by the Court, "[t]he issued claims included 'arbiter' but did not limit the claimed arbiter to a particular configuration." Dkt. 155, at 29. Accordingly, the Court's construction of the arbiter terms is correct.

### E. "control circuit"

| Term | Court's Construction | Defendants' Proposal |
|---|---|---|
| "control circuit" | No construction necessary. | "an electronic control device that is separate from the CPU or processor" |

As correctly observed by the Court, the specification does not require that the control circuit be physically separate from the CPU. *See* Dkt. 155, at 33 (referring to the order in Case No. 2:14-cv-690, Dkt. 155). As stated by the Court, "the prosecution history does not stand for Defendants' proposition that the control circuit must be a separate device." *Id.* Accordingly, Defendants' attempt to add this language is an improper attempt to narrow the claim language. Moreover, the claim language itself provides substantial guidance as to the meaning of the term "control circuit" and no specific construction is necessary.

### F. "directly supplied" and "directly supplies"

| Term | Court's Construction | Defendants' Proposal |
|---|---|---|
| "directly supplied/supplies" | "supplied/supplies without being stored in main memory for purposes of decoding subsequent images" | "supplied/supplies without intervening components" |

As correctly observed by the Court, the term "directly supplied" concerns the system's use of decompressed frames in the context of video decoding and not the general absence of intervening components. Instead, "bidirectional images are provided from the decoder to the display adaptor without being stored in the main memory" and "[t]he bypassing of the main memory is the context in which 'directly supplied' is utilized in the specification." Dkt. 155, at 38-39. In contrast, "Defendants' emphasis on 'no intervening' components lacks support in the specification" and is at odds with the embodiment disclosed in Figure 3, which "teaches the use of intervening chipset components." Accordingly, Defendants' proposed construction is improper.

### G. "contiguous" and "non-contiguous"

| Term | Court's Construction | Defendants' Proposal |
|---|---|---|
| a. "contiguous" | No construction necessary. | a. "adjacent" |
| b. "non-contiguous" | | b. "non-adjacent" |

Defendants do not dispute that a person of ordinary skill in the art would have no difficulty understanding the meaning of the terms "contiguous" and "non-contiguous" in the context of memory addresses. As the Court noted, "[t]he parties merely disagree as to what would be the most helpful presentation of the meaning of these terms to a jury." Dkt. 155, at 46. In this case, the Court properly observed that "an expert could easily explain the meaning in the context of addresses" and correctly determined that no construction was necessary. Defendants' insistence on a "legally operative construction" misses the point as substituting their preferred term for the actual claim language provides no meaningful guidance as to the meaning of the term. *See, e.g., UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*, 2013 WL 2325118, *14 (E.D. Tex. May 28, 2013) ("Substituting 'separation' for 'distance' provides no meaningful guidance as to the meaning of the term. . . . Therefore, no construction is necessary for these terms."). As a result, the Court's determination that no construction is necessary is correct.

Dated: February 29, 2016    Respectfully submitted,

*/s/ Michael McBride*
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@azalaw.com
Amir Alavi
Texas Bar No. 00793239
aalavi@azalaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@azalaw.com
Alisa A. Lipski
Texas Bar No. 24041345
alipski@azalaw.com
Justin Chen
Texas Bar No. 24074204
jchen@azalaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@azalaw.com
Kyril Talanov
Texas Bar No. 24075139
ktalanov@azalaw.com
Masood Anjom
Texas Bar No. 24055107
manjom@azalaw.com
Nathan Campbell
Texas Bar No. 24097455
ncampbell@azalaw.com
AHMAD, ZAVITSANOS, ANAIPAKOS,
    ALAVI & MENSING P.C.
1221 McKinney Street, Suite 2500
Houston, TX 77010
Telephone: 713-655-1101
Facsimile: 713-655-0062

T. John Ward, Jr.
Texas Bar No. 00794818
jw@wsfirm.com
WARD & SMITH LAW FIRM
P.O. Box 1231
Longview, TX 75606-1231
Telephone: 909-757-6400
Facsimile: 909-757-2323

- 7 -

                                  **ATTORNEYS FOR PLAINTIFF**
                                  **PARTHENON UNIFIED MEMORY**
                                  **ARCHITECTURE LLC**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 29, 2016.

                                              */s/ Michael McBride*
                                              Michael McBride